**Opinion issued December 15, 2022**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-21-00101-CV
_____

**CHRISTINE LENORE STARY, Appellant**

**V.**

**BRADY NEAL ETHRIDGE, Appellee**

---

**On Appeal from the 280th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-16834**

---

## DISSENTING OPINION

The trial court below entered a lifetime family-violence protective order

prohibiting appellant Christine Lenore Stary from seeing or communicating with her

three minor children indefinitely. The indefinite duration of this order prohibiting

contact between a parent and her children effectively terminated Stary's parental rights and deprived her of the fundamental liberty interests in the care, custody, and control of her children. United States Supreme Court precedent holds that before such a deprivation may occur, due process requires the trial court to apply a heightened standard of proof: clear and convincing evidence. The trial court's implementation of a lifetime protective order against a parent based on facts found by a mere preponderance of the evidence violated Stary's right to due process. Because the majority affirms on this issue, I respectfully dissent.

Due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)); *see* U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 19. A parent's interest in the care, custody, and control of her children "is perhaps the oldest of the fundamental liberty interests" recognized by the United States Supreme Court. *Troxel*, 530 U.S. at 65; *see Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (emphasizing "the importance of the family" and recognizing that rights to conceive and to raise one's children are "essential," "basic civil rights of man," and "(r)ights far more precious . . . than property rights") (citations omitted).

It is well settled that, in a proceeding to terminate parental rights, due process requires courts to apply the heightened proof standard of clear and convincing

evidence. *Santosky v. Kramer*, 455 U.S. 745, 747–48 (1982) (holding that clear and convincing evidence is required to "sever completely and irrevocably the rights of parents in their natural child"); *In re N.G.*, 577 S.W.3d at 235; *see also* TEX. FAM. CODE § 161.001(b) (requiring proof by clear and convincing evidence to terminate parent-child relationship). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

A standard of proof serves to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Santosky*, 455 U.S. at 754–55 (quoting *Addington v. Texas*, 441 U.S. 418, 423 (1979)). The preponderance of the evidence standard, which the trial court applied here, "indicates both society's 'minimal concern with the outcome,' and a conclusion that the litigants should 'share the risk of error in roughly equal fashion.'" *Id.* at 755 (quoting *Addington*, 441 U.S. at 423).

The heightened standard of clear and convincing evidence, by contrast, is generally applied "when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" *Id.* at 756 (quoting *Addington*, 441 U.S. at 424). This heightened standard of proof

provides a level of certainty "necessary to preserve fundamental fairness" in proceedings that threaten "a significant deprivation of liberty" or "stigma," such as loss of parental rights. *Id.* (quoting *Addington*, 441 U.S. at 425, 426). "In parental rights termination proceedings, the private interest affected is commanding; the risk of error from using a preponderance standard is substantial; and the countervailing governmental interest favoring that standard is comparatively slight." *Id.* at 758 (balancing due process factors). Thus, due process requires clear and convincing evidence before a parent may be deprived of her fundamental liberty interest in the care, custody, and control of her children.

The Family Code authorizes a court to enter a protective order if it finds that family violence has occurred and is likely to occur in the future. TEX. FAM. CODE §§ 81.001, 85.001(b). Generally, a family-violence protective order is effective for up to two years. *Id.* § 85.025(a). However, a court may enter a protective order for a period exceeding two years if the court finds, among other things, that the person who is the subject of the protective order "committed an act constituting a felony offense involving family violence against the applicant or a member of the applicant's family or household, regardless of whether the person has been charged with or convicted of the offense." *Id.* § 85.025(a-1)(1). Protective orders are civil in nature, and therefore the preponderance of the evidence standard of proof typically

4

applies. *See Roper v. Jolliffe*, 493 S.W.3d 624, 638 (Tex. App.—Dallas 2015, pet. denied).

The protective order in this case included a finding that Stary's conduct "against at least one of the minor children for whom the suit was filed would be a felony if charged[.]" *See* TEX. FAM. CODE § 85.025(a-1)(1). Based on this finding, the order stated that it was effective for a "permanent duration" subject to either appellee Brady Ethridge or the children filing a motion to vacate or modify the order. *Cf. id.* § 85.025(b) (authorizing person who is subject of protective order to file motion requesting that court review and determine whether continuing need exists for protective order). Among other things, the protective order prohibited Stary from directly communicating with her children; going near their residence, schools, or any place they are known to be; and "engaging in conduct directed specifically toward" the children. *See id.* § 85.022(b) (providing list of actions in which court may prohibit subject of protective order from engaging); *Rodriguez v. Doe*, 614 S.W.3d 380, 385–86 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (concluding that section 85.022(b) is not exhaustive list). Stary argues that the order "essentially terminated [her] parental rights" without affording her due process. I agree.

Although the protective order does not expressly state expressly that it terminated Stary's parental rights, the order *indefinitely* prohibits her from seeing or communicating with her children or, even more broadly, "engaging in conduct

directed specifically toward" the children. *See In re D.T.*, 625 S.W.3d 62, 69 (Tex. 2021) (recognizing "fundamental nature of the parental right to make child-rearing decisions"). The indefinite duration of the order prohibits all meaningful contact between Stary and her children—*forever*. Indeed, the trial court's order is even more extreme than a termination of parental rights, as termination orders do not bar a parent from contacting or directing activity toward the child once the child reaches the age of majority.

The breadth of the order deprived Stary of her fundamental liberty interest in the care, custody, and control of her children even though the deprivation was accomplished in a protective order proceeding rather than a parental termination proceeding. *See Troxel*, 530 U.S. at 62–66; *Stanley*, 405 U.S. at 651; *In re N.G.*, 577 S.W.3d at 235. At stake in the proceeding was Stary's interests in seeing, communicating with, and having a relationship with her children. These interests are particularly important and more substantial than the mere loss of money; Stary faced "a significant deprivation of liberty." *See Santosky*, 455 U.S. at 756; *Addington*, 441 U.S. at 424, 425. Fundamental fairness required the trial court to apply the heightened standard of proof by clear and convincing evidence before it could deprive Stary of her fundamental liberty interest. *See Santosky*, 455 U.S. at 756; *In re N.G.*, 577 S.W.3d at 235; *In re G.M.*, 596 S.W.2d 846, 846–47 (Tex. 1980)

("[A]ctions which break the ties between a parent and a child are unjustifiable without the most solid and substantial reasons.").

To be sure, there are some differences between a parental termination proceeding and a family-violence protective order proceeding. For example, a parental termination proceeding "is complete, final, and irrevocable" and "divests forever the parent and child of all legal rights, privileges, duties, and powers between each other except for the child's right to inherit." *In re G.M.*, 596 S.W.2d at 846; *see* TEX. FAM. CODE § 161.206(b). Under limited circumstances, however, a former parent whose parental rights have been terminated may file a petition to reinstate those rights. TEX. FAM. CODE § 161.302(a)(4), (b) (stating that former parent whose rights were involuntarily terminated may file petition to reinstate rights only if termination of parental rights resulted from suit filed by state, at least two years have passed since rights were terminated and appeal is not pending, child has not been adopted and is not subject of adoption placement agreement, and petitioner has provided statutory notice). Similarly, the subject of a protective order can file a motion "requesting that the court review the protective order and determine whether there is a continuing need for the order." *Id.* § 85.025(b). If the protective order is effective for more than two years, the parent is limited to two motions for review, and if both motions are denied, the protective order remains in effect until its stated expiration date—potentially forever, as in this case. *Id.* § 85.025(b-1), (b-2).

7

These minor distinctions do not merit a different standard of proof in a case like this, where the protective order indefinitely prohibits any meaningful contact between Stary and her children. Although Stary may request that the issuing court review whether a continuing need exists for the protective order, a person whose parental rights have been terminated may also seek reinstatement of those rights in some circumstances. *See id.* §§ 85.025(b), 161.302(a)(4), (b). There is no guarantee that the protective order will be vacated or that the trial court will apply a clear and convincing evidence standard of proof to the determination of whether a continuing need exists for the order. In short, there is no significant difference between the permanency and irrevocability of the lifetime protective order entered in this case and a parental termination order. Stary was denied the constitutional safeguard of a heightened standard of proof. A protective order should not be used to end run parental termination proceedings and skirt the due process guarantees afforded to those proceedings.

The majority has not identified any case in which an appellate court has upheld a lifetime protective order against a custodial parent based on facts found by a mere preponderance of the evidence. Two of our sister courts of appeals have rejected parents' contentions that due process requires a heightened burden of proof in family-violence protective order proceedings, but neither of those opinions expressly addressed a permanent or lifetime protective order against a parent. *See*

8

*Jovel v. Blanco*, No. 14-20-00638-CV, 2022 WL 220251, at *5 (Tex. App.—Houston [14th Dist.] Jan. 25, 2022, no pet.) (mem. op.) (rejecting, in dicta, parent's claim that protective order effective for ten years should be subject to heightened burden of proof); *Turner v. Roberson*, No. 05-11-01272-CV, 2013 WL 2152636, at *3–4 (Tex. App.—Dallas May 17, 2013, no pet.) (mem. op.) (concluding that protective order did not terminate parent's parental rights, but not stating length of protective order).

Outside of the parent-child context, courts have concluded that protective orders need not be supported by clear and convincing evidence. *See Roper*, 493 S.W.3d at 638 (rejecting estranged boyfriend's contention that due process requires clear and convincing evidence to support protective order); *Caballero v. Caballero*, No. 14-16-00513-CV, 2017 WL 6374724, at *5 (Tex. App.—Houston [14th Dist.] Dec. 14, 2017, no pet.) (mem. op.) (rejecting ex-husband's argument that due process required heightened standard of proof in protective order proceeding for protection of ex-wife, with whom ex-husband had no children, because protective order "does not directly infringe on appellant's parental rights"). These cases do not, however, address a lifetime protective order indefinitely prohibiting contact between parent and child.

In this case, Stary's interests at stake were particularly important considering she faced a significant deprivation of her liberty—the indefinite loss of any

9

meaningful contact or relationship with her children—a deprivation which ultimately occurred. *See Santosky*, 455 U.S. at 756. In cases involving fundamental rights such as this one, the minimum function of a standard of proof is to reflect the value society places on the right. *See id.* Fundamental fairness required the level of certainty inherent in the intermediate standard of clear and convincing evidence. *Id.* at 755–56. A limited opportunity to later seek review of a continuing need for a lifetime protective order does not make a fundamentally unfair proceeding comport with due process.

To be clear, this dissent does not condone a heightened standard of clear and convincing evidence in all family-violence protective order proceedings seeking to prohibit all contact or communication between a parent and child for more than two years. I would simply hold that due process does not permit a trial court to effectively terminate a parent's rights by issuing a *permanent* protective order barring all contact with the child based on facts found by a preponderance of the evidence. The majority errs by affirming. I respectfully dissent.


April L. Farris
Justice

Panel consists of Chief Justice Radack and Justices Countiss and Farris.

Justice Farris, dissenting.

10